**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **American Civil Liberties Union** | ) | |
| **of Ohio Foundation, Inc.** | ) | **CASE NO. 1:08 CV 2372** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Hon. James DeWeese** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |


### INTRODUCTION

This matter is before the Court upon plaintiff's Motion for Summary Judgment (Doc. 16). This is a First Amendment Establishment Clause dispute.  For the reasons that follow, plaintiff's motion is GRANTED.

### FACTS

Plaintiff, American Civil Liberties Union of Ohio Foundation, Inc. (hereinafter "ACLU"), brings this action against defendant, the Honorable James DeWeese, a judge of the Richland County Court of Common Pleas, alleging a violation of the Establishment Clause of the United States Constitution and a violation of the Ohio Constitution.

1

In July 2000, defendant, who was elected judge in 1991, created and hung on opposite walls in his courtroom two posters:  the Bill of Rights and the Ten Commandments.  The ACLU, a not-for-profit voluntary membership organization with approximately 53 members in Richland County, sued defendant in 2001 for violating the First Amendment of the United States Constitution.  The court found that defendant's display of the Ten Commandments poster violated the Establishment Clause and issued an injunction directing defendant to remove the poster.  *American Civil Liberties Union of Ohio Foundation, Inc., v. Ashbrook,* 211 F. Supp. 2d 873 (N.D. Ohio 2002).  Defendant appealed and the Sixth Circuit affirmed the district court's decision.  *ACLU v. Ashbrook,* 375 F.3d 484 (6th Cir. 2004).  Defendant then complied with the injunction.

In June 2006, defendant created another poster entitled "Philosophies of Law in Conflict," and hung it in his courtroom.  (Ex. A-3.)  Under the title, but near the top of the page, are three horizontally-arranged numbered comments in small type, authored by defendant, in which defendant discusses a conflict between two different legal philosophies, moral absolutism and moral relativism.  He states in the comments that "[we] are moving toward moral relativism."  Underneath these comments are two vertical columns in larger type representing the two legal philosophies.  The left-hand column is entitled Moral Absolutes and is followed by the text of the Ten Commandments, and the right-hand column is entitled Moral Relatives and is followed by what defendant characterizes as "Humanist Precepts."  Following these two columns is a fourth numbered comment in smaller type in which defendant describes what he perceives as the negative result of society moving toward moral relativism.  He explains that America's founders recognized the need to ground legal philosophy on moral absolutes instead of on moral

2

relatives, and concludes by stating that he agrees with the founders and joins them in "personally acknowledging the importance of Almighty God's fixed moral standards for restoring the moral fabric of this nation."  A printed signature is below this statement.  In the lower right hand corner of the frame, readers are invited to obtain a pamphlet from the court receptionist that further explains defendant's philosophy.

In 2008, plaintiff filed a Motion to Show Cause against defendant, arguing defendant was in contempt of the court's order by displaying the current poster.  The motion was denied as the court found the current poster was not identical to the previous poster of the Ten Commandments, and the display of the current poster was thus not in contempt of the court's order.

Thereafter, plaintiff filed this suit against defendant on behalf of its members in Richland County, including attorney Bernard R. Davis who frequently appears in defendant's courtroom. The complaint contains three claims for relief.  Count One is a claim for declaratory relief that defendant's display of the poster violates the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.  Count Two is a claim for an injunction against continued display of the poster.  Count Three is claim for declaratory relief that defendant's display of the poster violates the Ohio Constitution.

Plaintiff moves for summary judgment on all claims in the complaint.  Defendant opposes the motion.

## STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)). *See also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material fact rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). A fact is material only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden shifts to the nonmoving party:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 255). *See also United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).

Summary judgment is appropriate when a party who bears the burden of proof at trial

fails to make a showing sufficient to establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). When the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  "The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 252).  Moreover, if the evidence is "merely colorable" or is not "significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

**<u>ANALYSIS</u>**

**A.      Standing**

Article III of the United States Constitution requires that parties invoking federal jurisdiction must allege an actual case or controversy.  *Airline Prof'ls Ass'n of the Int'l Bhd. of Teamsters v. Airborne, Inc.,* 332 F.3d 983, 986 (6th Cir. 2003) (citing *O'Shea v. Littleton,* 414 U.S. 488, 493-94 (1974)).  To satisfy this case or controversy requirement, a plaintiff must establish standing by showing three elements:  "(1) an injury in fact that is concrete and particularized; (2) a connection between the injury and the conduct at issue– the injury must be fairly traceable to the defendant's action; and (3) [a] likelihood that the injury would be redressed by a favorable decision of the Court."  *Id.* at 987 (citing *Courtney v. Smith,* 297 F.3d 455, 459 (6th Cir. 2002).  In First Amendment Establishment Clause cases, the actual injury-in-fact that plaintiff must show can be non-economic; indeed, "unwelcome direct contact with the

5

offensive object is enough." *Washegesic v. Bloomingdale Public Schools,* 33 F.3d 679, 682 (6th Cir. 1994).  A voluntary membership organization has standing to sue on behalf of its members when its members otherwise have standing to sue in their own right; the interests the organization seeks to protect are germane to the organization's purpose; and neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit. *ACLU v. Ashbrook,* 375 F.3d 484, 489 (6th Cir. 2004) (citing *Hunt v. Washington State Apple Adver. Comm.,* 432 U.S. 333, 343 (1977)).

Standing is more than a pleading requirement, and each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.* with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)).  Thus, "[t]o prevail on a Federal Rule of Civil Procedure 56 motion for summary judgment . . . mere allegations of injury are insufficient.  Rather a plaintiff must establish that there exists no genuine issue of material fact as to justiciability or the merits." *Dept. of Commerce v. United States House of Representatives,* 525 U.S. 316, 329 (1999).

Plaintiff has premised standing in this case on an injury suffered by its member, Bernard R. Davis.  Mr. Davis's declaration states the following, in relevant part:

> 3.  I have witnessed on many occasions the poster display entitled "Philosophies of Law in Conflict" containing a version of the Ten Commandments, which are characterized as "Moral Absolutes," side by side with a collection of quotations which are characterized as "Moral Relatives," and the express espousal of a legal philosophy which is, in my opinion, clearly a religious message.  This display offends me personally, in that I perceive it as an inappropriate expression of a religious viewpoint as well as a display of a sacred text in a public building.

> 4. Because of my duties as a member of the bar, I have no choice but to appear in the aforesaid courtroom, and to witness the display in question. I find said display to be personally offensive and demeaning because it makes me feel as though a particular religious point of view is being thrust upon me.

(Ex. 4.)

Defendant disputes that the plaintiff was injured. Defendant claims that defendant's own declaration "calls into serious question the plausibility of Mr. Davis' (and, by extension, the ACLU's) claim to be 'injured' in the constitutional sense." (Defendant's Opposition Brief (hereinafter "Opp. Br.") at 6.) Defendant also claims that the three-year period between when he hung the poster and the filing of the complaint shows that Mr. Davis's injury is not real. Defendant's declaration, in relevant part, states the following:

> 11. I am personally familiar with attorney Bernard Davis and believe we share a cordial professional relationship. Mr. Davis has appeared in my courtroom numerous times during the years I have been a judge. I believe that Mr. Davis would testify that I have not referred to the poster in question, nor the opinions expressed therein in any proceeding in which he has been involved. I believe further that Mr. Davis would testify that I have never done or said anything in my role as a judge that a reasonable attorney or litigant would consider demeaning, offensive, or be construed as having my or anybody else's religious views thrust upon him.

> 12. I am not aware of Mr. Davis ever having made a request that one of his cases be reassigned away from me, or that I recuse myself from any of his cases due to any poster hanging in my court room [sic] or any other reason.

> 13. In addition, I am aware of at least one occasion in which Mr. Davis himself has used religious references to the jury in the course of his summation in a murder trial.

(Ex. A.).

7

Upon review, the Court finds that when the evidence is examined in the light most favorable to the non-moving party, defendant has set forth no facts showing that there is a genuine issue for trial.  Mr. Davis has standing to sue in his own right because he has established an injury– being personally offended– that is traceable to defendant's display of the poster.  The relief requested in the complaint– declaratory and injunctive relief– will prevent further injury.  The ACLU has standing to sue on behalf of its members because the civil liberties at issue in this lawsuit are those that the ACLU as an organization seeks to protect, and no ACLU member would be required to directly participate in the suit.  Defendant's affidavit does not refute that Mr. Davis appeared in his courtroom and was offended by the poster. Defendant's opinions as to how Mr. Davis would testify to certain matters are irrelevant.  Accordingly, plaintiff has standing to sue in this case.

## B.        Establishment Clause Violation

The First Amendment Establishment Clause states that "Congress shall make no law respecting an establishment of religion."  *U.S. Const. amend. I.*  The First Amendment has been incorporated to the states and their subdivisions through the Fourteenth Amendment.  *Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290, 301 (2000).  Government action does not violate the Establishment Clause if the action (1) has a secular purpose; (2) does not have the primary or principal effect of either advancing or inhibiting religion; and (3) does not foster an excessive governmental entanglement with religion.  *Lemon v. Kurtzman,* 403 U.S. 602, 612-613 (1971).  Although *Lemon* has been criticized in a number of Supreme Court cases, it has not been expressly overruled and continues to be applied in the Sixth Circuit.  *ACLU v. Mercer County,* 432 F.3d 624, 636 (6th Cir.  2005) ("The recent decisions of this Court have routinely applied

8

*Lemon,* including the endorsement test.").

The first prong of the *Lemon* test was recently reformulated in *McCreary County v. ACLU,* 545 U.S. 844, 860 (2005).  The secular purpose must predominate over any purpose to advance religion.  *Id.*; *Mercer County,* 432 F.3d at 635.  The court defers to the government's stated purpose, except where the stated purpose is a sham and the primary purpose is religious. *Mercer County,* 432 F.2d at 631.

The second prong has been refined into the endorsement test, which asks whether the government action has the purpose or effect of endorsing religion.  *Adland v. Russ,* 307 F.3d 471, 479 (6th Cir. 2002).  The test for endorsement is whether a reasonable person would view the government act as an endorsement of religion.  *Mercer County,* 432 F.3d at 636.  The reasonable person is aware of the circumstances surrounding the government action, including the history and context of the act.  *Id.*  "If context, history, and the act itself send the 'unmistakable message' of endorsing religion, then the act is unconstitutional."  *Id.* at 637 (quoting *County of Allegheny v. ACLU,* 492 U.S. 573, 600 (1989)).

### 1.    Secular Purpose

Plaintiff argues that defendant's purpose for the poster, stated in his declaration, is not secular.  Plaintiff characterizes defendant's purpose as to opine that "society values are failing because people are not upholding the moral absolutes, exemplified in the Ten Commandments, which come from God, and are adopting humanist precepts, which change with the times." (Plaintiff's Brief (hereinafter "Br.") at 12.)  Defendant, on the other hand, argues that his declaration sets forth a secular purpose:  "[to] express[] his legal philosophy and [to] foster discussion and debate about legal philosophy and the consequences of basing a society's legal

9

system on relativism as opposed to moral absolutes."  (Opp. Br. at 5, citing Ex. A.)

Upon review, the Court finds that defendant's stated purpose is a religious purpose.

Defendant's purpose can be readily ascertained from his declaration, the language on the poster

itself, and the pamphlet available at the courthouse that further explains the poster.  Defendant

states in his declaration:

> My purpose in creating and displaying this poster was to express
> my views about two warring legal philosophies that motivate
> behavior and the consequences that I have personally witnessed in
> my 18 years as a trial judge of moving to a moral relativist
> philosophy and abandoning a moral absolutist legal philosophy.

(Ex. A at ¶ 5.)  Defendant further states:  "I hope the poster would serve the purpose– for anyone

who bothers to approach and read it– of fostering discussion and debate about the pragmatic

consequences of our legal philosophies."  (Ex. A at ¶ 7.)  Defendant explains the two "warring

legal philosophies" in the "editorial comments" of his poster:

> 2.  All law is legislated morality.  The only question is whose
> morality.  Because all morality is based on faith, there is no such
> thing as religious neutrality in law or morality.
>
> 3.  Ultimately there are only two views:  Either God is the final
> authority and we acknowledge His unchanging standards of
> behavior.  Or man is the final authority, and standards of behavior
> change at the whim of individuals or societies.

(Ex. A-3.)  After Comment 3, the poster displays as "examples" of these two views the Ten

Commandments, or moral absolutes, and what defendant has characterized as Humanist

Precepts, or moral relatives.  Following the display of the Ten Commandments and the Humanist

Precepts, defendant explains that crime and other "social ills" have increased because society is

shifting toward moral relativism.  (Ex. A-3, Comment 4.)  Finally, defendant concludes the

poster by stating:  "I join the Founders in personally acknowledging the importance of Almighty

God's fixed moral standards for restoring the fabric of this nation."  (*Id.*)

Defendant's pamphlet further clarifies defendant's purpose in displaying the poster:  "We cannot teach that there is no truth and no fixed moral duty to others and then be surprised when we reap the consequences in crime and destruction of families.  That is the reason for the courtroom display on the conflict of legal philosophies."  (Ex. A-4 at 3.)

The Court finds that defendant's purpose is: (1) to teach that law comes from God and that people should follow the Ten Commandments to solve the problem of crime and other "social ills" in society; and (2) to foster discussion and debate about the consequences of moral absolutism and moral relativism.  Defendant's attempt to characterize this purpose as a "non-religious" purpose fails in light of the plain words of his declaration, the poster, and the pamphlet.

Moreover, this purpose is substantially similar to what the court found defendant's purpose to be in displaying a poster of the Ten Commandments in *Ashbrook*:

> (1) to instruct individuals that our legal system is based on moral absolutes from divine law handed down by God through the Ten Commandments and (2) to help foster debate between the philosophical position of moral absolutism (as set forth in the Ten Commandments) and moral relativism in order to address what he perceives to be a moral crisis in this country.

*ACLU v. Ashbrook,* 375 F.3d 484, 492 (6th Cir. 2004) (quoting *ACLU v. Ashbrook,* 211 F. Supp. 2d 873, 889 (N.D. Ohio 2002)).  The Sixth Circuit agreed with the district court that such a purpose failed the *Lemon* test:

> The district court concluded that "[a] state actor officially sanctioning a view of moral absolutism in his courtroom *by particularly referring to the Ten Commandments* espouses an innately religious view and, thus, crosses the line created by the *Establishment Clause*.". . . Accordingly we find that the district

11

> court properly applied the first prong of the *Lemon* test and did not
> misapply the teaching of *Stone v. Graham,* as appellant contends.

*Id.* at 492 (internal citations omitted) (emphasis in original).

Defendant argues that *Ashbrook* relied on *Stone v. Graham,* 449 U.S. 39 (1980), which he claims was subsequently curtailed by *McCreary County* and *Van Orden v. Perry,* 545 U.S. 677 (2005). Defendant argues that in light of these Supreme Court decisions and the Sixth Circuit's decision in *Mercer County*, *Ashbrook* is no longer good law and its holding "falls apart."

Upon review, the Court finds that these cases do not affect the continued viability of the *Ashbrook* holding. Defendant accuses *Ashbrook* of "lift[ing] [from *Stone*] a virtual presumption of unconstitutionality to be applied whenever the Decalogue is displayed on public property." (Opp. Br. at 8.) The Sixth Circuit certainly acknowledged that "[t]he Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths." *Ashbrook,* 375 F.3d at 491 (quoting *Stone,* 449 U.S. at 41-42). But *Ashbrook,* in discussing the purpose inquiry of the *Lemon* test, recognized that "the Supreme Court has established no *per se* rule that displaying the Ten Commandments in a public setting is unconstitutional" even though the Supreme Court has determined that the Ten Commandments "do not confine themselves to arguably secular matters." *Id.* *Ashbrook* further explained that "it would be possible for a government actor to use the Decalogue in a constitutionally permissible manner." *Id.* (citing *Edwards v. Aguillard,* 482 U.S. at 594 ("[*Stone*] did not mean that no use could ever be made of the Ten Commandments, or that the Ten Commandments played an exclusively religious role in the history of Western Civilization.")). *Ashbrook* upheld the district court's finding of unconstitutionality under the *Lemon* test based on defendant's own stated purpose for the Ten Commandments poster, which "admonish[ed] participants in talks or programs in his courtroom to look to the Commandments

12

as a source of law." *Id.* at 492.  Though the court cited *Stone*, *Ashbrook* relied on *Lemon*, a

precedent that was subsequently reaffirmed in *McCreary County*.

  *McCreary County* involved an evolving display of the Ten Commandments in Kentucky

courthouses in two counties.  The Ten Commandments were first displayed in isolation in the

McCreary County Courthouse in response to a county legislative order requiring the

Commandments to be displayed in a very prominent area of the courthouse.  *McCreary County,*

545 U.S. at 851.  In neighboring Pulaski County, a judge-executive posted the Commandments

during a ceremony that included the pastor of his church.  *Id.*  After the counties were sued, the

counties passed nearly identical resolutions acknowledging the Ten Commandments as the

primary source of Kentucky law and the duty of elected officials to acknowledge God as "the

source of America's strength and direction."  *Id.* at 853.  The counties expanded their displays to

include other documents,[1] each excerpted to highlight religious references, and each displayed

smaller than the Ten Commandments.  *Id.*  The district court, after analyzing the displays under

*Lemon,* entered a preliminary injunction ordering that the displays be removed.  *Id.* at 854.  The

counties removed the displays and installed yet a third display of nine equal-sized documents,

including the Ten Commandments.[2]  Each document was accompanied by a statement about its

---

[1]  The following documents were included as part of the second display:  the "endowed by their Creator" passage from the Declaration of Independence; the Preamble to the Constitution of Kentucky; the national motto "In God We Trust"; a page from the Congressional Record of February 2, 1983 proclaiming the Year of the Bible and including the Ten Commandments; a proclamation by President Lincoln designating a National Day of Prayer and Humiliation; an excerpt from President Lincoln's "Reply to Loyal Colored People of Baltimore upon Presentation of a Bible"; a proclamation by President Reagan making 1983 the Year of the Bible; and the Mayflower Compact.  *McCreary,* 545 U.S. at 854.

[2]  The following documents were included as part of the third display:  the Magna Carta, the Declaration of Independence, the Bill of Rights, the lyrics of the Star

legal and historical significance.  *Id.* at 856.  No new resolutions were enacted and the prior

resolutions were not repealed.  *Id.* at 855.  The ACLU moved to enjoin the display.  *Id.*

The district court considered the entire history of the counties' displays and found that

"in light of the Counties' decision to post the Commandments by themselves in the first instance,

contrary to *Stone*, and later to accentuate the religious objective by surrounding the

Commandments with specific references to Christianity," the purpose of the display was

religious, not educational.  *Id.* at 857 (internal citations and quotations omitted).  The Supreme

Court affirmed, declining to abandon the *Lemon* test and reaffirming the necessity to seriously

consider purpose under *Lemon.  Id.* at 874 ("We hold only that purpose needs to be taken

seriously under the Establishment Clause and needs to be understood in light of context[.]").

*Mercer County* was decided after *McCreary County* and involved a display identical to

the third display at issue in *McCreary County.  Mercer County,* 432 F.3d at 631.  Unlike the facts

in *McCreary County*, Mercer County's display was neither the result of various governmental

resolutions, evolving displays, and subsequent litigation, nor was it installed in a ceremony

involving religious officiants.  The Sixth Circuit, applying *Lemon* and *McCreary*, found that the

Mercer County display had a predominantly secular purpose.  *Id.*  The county stated that its

purpose for erecting the display was that "all of the documents, including the Ten

Commandments, have played a role in the formation of our system of law and government . . . .

[The] display is not intended [to], nor does it, endorse or promote religion.  It simply

acknowledges our history."  *Id.* at 627.  Giving appropriate deference to the government's stated

_____

Spangled Banner, the Mayflower Compact, the National Motto, the Preamble to the Kentucky
Constitution, and a picture of Lady Justice.  *Id.* at 855.

purpose, and noting the lack of "religiously motivated governmental acts or resolutions to incorporate into the display," the Sixth Circuit agreed with the district court that "the Commandments were displayed in a proper historical context *ab initio*."  *Id.* at 632.  The Sixth Circuit also noted, as defendant points out, that "[w]hatever is left of *Stone* is limited to circumstances involving public displays of the Ten Commandments in isolation."  *Id.* at 634.

> *Van Orden*, decided on the same day as *McCreary County*, involved the display of a "passive monument" inscribed with the Ten Commandments on the grounds of the Texas State Capitol, which the Court held to be constitutional.  *Van Orden,* 545 U.S. at 686.  The monument, donated by the Fraternal Order of the Eagles forty years prior to the suit, was located among 17 monuments and 21 historical markers over 22 acres, which "commemorat[e] the people, ideals, and events that compose Texan identity," as declared by a state resolution.  *Id.* at 681.  The Court declined to apply the *Lemon* test:

> Whatever may be the fate of the *Lemon* test in the larger scheme of
> Establishment Clause jurisprudence, we think it not useful in
> dealing with the sort of passive monument that Texas has erected
> on its Capitol grounds.  Instead, our analysis is driven both by the
> nature of the monument and by our Nation's history.

*Id.* at 686.  In its analysis, the Court acknowledged both the significance of the role of religion in our Nation's history and limitations on the display of religious messages and symbols.  *Id.* at 690. While discussing the cases that have limited the display of the Ten Commandments, the Court described *Stone* as "a consequence of the particular concerns that arise in the context of public elementary and secondary schools" that did not extend to a legislative chamber or to capitol grounds.  *Id.* at 691 (internal citations omitted).  The Court found *Stone* to be inapplicable in *Van Orden* because "[t]he placement of the Ten Commandments monument on the Texas

15

State Capitol grounds is a far more passive use of those texts than was the case in *Stone*, where the text confronted elementary school students every day." *Id.* Unlike *Ashbrook*, *Van Orden* relied upon neither *Lemon* nor *Stone* in determining the constitutionality of the display.

The Court thus disagrees that *Ashbrook* has been superseded. Though the Sixth Circuit cited to *Stone, Ashbrook* was firmly grounded in the purpose inquiry of *Lemon*, which remains the standard today. Defendant argues that because *Stone* was limited to displays of the Ten Commandments in isolation, the holding of *Ashbrook* cannot be applied to his current poster, which does not display the Ten Commandments in isolation. Defendant's argument fails, however, because *Ashbrook*'s holding was based on defendant's stated purpose in that case, not simply on the fact that defendant displayed a framed poster of the Ten Commandments in the courtroom. *Ashbrook* is still good law in the Sixth Circuit and given that defendant's purpose is substantially the same in this case, his purpose fails the first prong of the *Lemon* test.

Defendant also attempts to show that his purpose is predominantly secular by offering the expert report of Gerard V. Bradley, a law professor from Notre Dame Law School, and an expert on the moral foundations of American law and jurisprudence. (Ex. B.) Bradley opines that defendant's poster "expresses in simple and stark form recognizable viewpoints within the fields of the foundations of American law and jurisprudence." (*Id.* at 11.) Whether defendant's viewpoint is recognizable or even common in jurisprudence, however, is not helpful in analyzing whether defendant had a predominantly secular purpose in displaying the poster. When viewed in the light most favorable to defendant, the expert's report does not change defendant's stated purpose.

Indeed, at times Bradley's report tends to contradict defendant's language in the poster

and the accompanying pamphlet.  For example, Bradley asserts that "the Display's author would not necessarily be endorsing a specific theological or religious tradition by 'join[ing]' the Founders."  (*Id.* at 6.)  Yet, defendant's pamphlet states that moral absolutism "bases its distinctions between right and wrong on the God of the Bible." (Ex. A-4 at 1.)   Further, defendant footnotes the foregoing statement with the assertion that "the Founders quoted the Bible more frequently than any other source.  Thirty-four percent of their citations were directly to the Bible."  (*Id.* at 3.)  By joining the Founders, defendant clearly intends to endorse the Judeo-Christian tradition.

Additionally, Bradley states that "the Display neither asserts nor implies that 'moral absolutes' such as the Ten Commandments are the *only* foundation of law."  (*Id.* at 10.) However, the display itself states:  "Ultimately, there are only two views:  Either God is the final authority, and we acknowledge His unchanging standards of behavior.  Or man is the final authority, and standards of behavior change at the whim of individuals and societies."  (Ex. A-3, Comment 3.)  As the display acknowledges that defendant subscribes to the first view and finds the two views mutually exclusive, the display *does* assert that moral absolutes– the unchanging standards of behavior– are the only foundation of law.

Finally, the expert report discusses at length why the display in this case is not "innately religious":

> The viewpoint which the Display expresses is basically this:  the better philosophy of law holds that law is based upon objective (or "absolute") moral norms which are somehow rooted in God.  But this most surely is not to say that the civil law itself is inherently religious.

(Ex. B at 9.)  Yet defendant comments in his display that "[a]ll law is legislated morality," that

17

"there is no such thing as religious neutrality in law or morality," and goes on to reiterate and explain his views in his explanatory pamphlet:

> The third reason censorship of the moral absolutes position is wrong is that there is no such thing as religious neutrality in the treatment of law and morality.  A person's fundamental beliefs about the nature of reality– the origin of the universe, how life arose, the nature of man, the basis of morality– are always matters of faith.  Whether or not those beliefs involve the existence of a supernatural, *they rest equally on faith and are religious*.

(Ex. A-3, Comment 2 and Ex. A-4 at 3 (emphasis added).)

Taking all of the evidence in the light most favorable to defendant, the Court finds no genuine issue of material fact as to defendant's purpose in posting the display.  Defendant's purpose is religious.  The display fails the first prong of the *Lemon* test and summary judgment in favor of plaintiff is warranted.

## 2.     Endorsement

Although "government action 'violates the Establishment Clause if it fails to satisfy any of the *Lemon* test prongs,'" because the parties have addressed at length the second prong of the test, the Court will also address it.  *Ashbrook,* 375 F.3d at 494 (quoting *Edwards v. Aguillard,* 482 U.S. 578, 583 (1987)).  Plaintiff argues that a reasonable observer would find the display of the poster to constitute an endorsement of religion by the government because the poster is located in a courtroom in a building owned by the county, and presumably with the county's approval; defendant is a state official and identifies himself as a sitting judge with 18 years of experience; and defendant represents the personification of government in his courtroom. Defendant responds by asserting that his "poster is not a *religious* display nor can the viewpoints he expresses be considered *religious* ones," thus the endorsement test does not apply.  (Opp. Br.

18

at 15 (emphasis in original).)  Defendant further argues that a reasonable observer of the poster would see it "as an exposition of competing legal and ethical philosophies and [would] recognize[] that the Commandments are being used as a symbol or emblem of a particular legal and jurisprudential philosophy which was common at the Founding and remains part of the jurisprudential mainstream (if no longer the majority view) today." (*Id.*)  Finally, defendant also argues that a reasonable observer would know that this poster is the creation of defendant "as a citizen entitled to express his views on legal philosophy." (*Id.*)

Upon review, the Court finds that a reasonable person would view defendant's display of the poster as a governmental endorsement of religion.  Defendant is a judge.  A judge is a state government official. *Mumford v. Basinski,* 105 F.3d 264, 268-69 (6th Cir. 1997).  The opinions expressed in the poster are those of a judge, not of a private citizen.  Defendant signed the poster as a judge, and displayed it in his courtroom  located in a building owned by the county and under the control of the county.  A reasonable observer would conclude that the state of Ohio and/or Richland County endorse the opinions set forth in the poster.

Further, defendant's poster expresses a preference for the Judeo-Christian faiths. Defendant openly states that by following moral relativism– also a religion, according to defendant's explanatory pamphlet– "we are paying a high cost in increased crime and other social ills." (Ex. A-3, Comment 4; Ex. A-4 at 3.)  Defendant also states that to "restor[e] the moral fabric of this nation," people must subscribe to the philosophy of moral absolutism. (Ex. A-3, Comment 4.)  This philosophy acknowledges that "God is the final authority" and has "unchanging standards of behavior." (*Id.* at Comment 3.)  These standards of behavior are exemplified in the Ten Commandments– a text that a reasonable observer would recognize as a

19

sacred text in the Judeo-Christian faiths.  Although defendant argues that the Ten Commandments and the Humanist Precepts are given at least equal treatment in the poster, the Humanist Precepts are included as examples of what standards of behavior should not be followed.   Such a preference for one religion over another, or indeed over no religion, violates the Establishment Clause.  *County of Allegheny v. ACLU*, 492 U.S. 573, 593 (1989) ("[I]t has been noted that the prohibition against governmental endorsement of religion 'preclude[s] government from conveying or attempting to convey a message that religion or a particular religious belief is favored or preferred.'").

The Court disagrees with defendant that a reasonable person would recognize defendant's poster "as an exposition of competing legal and ethical philosophies." While a reasonable person is deemed to be "aware of the circumstances under which governmental actions arise," including the "context, history, and act itself," *Mercer County,* 432 F.3d at 636-37, a reasonable person cannot be expected to be aware of competing schools of legal philosophy.  In this case, the history and context of defendant's act include defendant's previous display of the Ten Commandments poster which resulted in the *Ashbrook* decision holding that defendant unconstitutionally displayed the Commandments;  the removal of the Ten Commandments poster; and the posting of the new poster at issue in this case.  In light of this history and context, a reasonable person would likely interpret the poster as an attempt to "keep a religious document on the walls of courthouses constitutionally required to embody religious neutrality."  *McCreary County,* 545 U.S. at 873.  The Court will address defendant's contention that he has a free speech right with respect to the contents of the poster separately below.

Taking all of the evidence in the light most favorable to defendant, the Court finds no

genuine issue of material fact as to whether a reasonable person would find that the act of

hanging the poster in defendant's courtroom constitutes government endorsement of religion.

The display of the poster is government endorsement of religion. The poster fails the second

prong of the *Lemon* test.[3] Plaintiff is thus entitled to summary judgment on Counts One and Two

of the complaint.

**C.      Violation of Article I Section 7 of the Ohio Constitution**

Article I, Section 7 of the Ohio Constitution provides as follows:

> No person shall be compelled to attend, erect, or support any place
> of worship, or maintain any form of worship, against his consent;
> and no preference shall be given, by law, to any religious society;
> nor shall any interference with the rights of conscience be
> permitted.

The Supreme Court of Ohio has held that this provision of the Ohio Constitution is

approximately equivalent to the Establishment Clause. *Simmons-Harris v. Goff,* 711 N.E.2d

203, 211 (Ohio 1999). Ohio has adopted the three-prong *Lemon* test for violations of Article I,

Section 7. *Id.*

The Court thus finds that based on the analysis above and taking all evidence in the light

most favorable to defendant, no genuine issue of material fact exists as to whether defendant's

poster violates Article I, Section 7 of the Ohio Constitution. Plaintiff is entitled to summary

judgment on Count Three.

**D.      Freedom of Speech**

Defendant asserts that his actions in displaying the poster at issue are protected by the

Free Speech Clause of the First Amendment. Defendant argues that this position is supported by

---

[3]      As the parties have not addressed government entanglement with religion, the
Court declines to address the third prong of the *Lemon* test.

21

the Supreme Court's decision, subsequent to *Ashbrook*, in *Republican Party of Minnesota v. White,* 536 U.S. 765 (2002).  Defendant also argues that the following facts show that the poster constitutes defendant's personal expression and that it is displayed for an educational purpose: defendant's printed signature appears on the poster; the content clearly indicates the poster is the personal opinion of the author, and not that of the government; defendant has a right to decorate his courtroom according to personal choice; and the available explanatory pamphlet is written by defendant himself.  Defendant further supports his position by pointing to the Ohio Code of Judicial Conduct, which provides that "[a] judge may speak, write, lecture, teach and participate in other activities concerning the law, the legal system, and the administration of justice."

Plaintiff replies that *White* is inapposite to this case, and that the "badges of governmental action" show that the poster is government speech, not a personal endorsement.

Upon review, the Court finds that the poster is government speech endorsing religion and is not protected by the Free Speech Clause.  The Court agrees with plaintiff that *White* does not apply to this case.  *White* involved the speech of judicial candidates regarding disputed legal and political issues during election campaigns, not religious speech in the courtroom as is the case here.  "There is a 'crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect.'"  *Ashbrook,* 375 F.3d at 490 n.4 (quoting *Santa Fe Independent School Dist. v. Doe,* 530 U.S. 290, 302 (2000)).  Defendant's attempts to characterize the display as private speech fail for the same reasons the Sixth Circuit rejected his Free Speech Clause argument in *Ashbrook:*

> DeWeese's posters are situated in a courtroom, a public space, and
> were placed on the wall by a sitting judge charged with the

22

> decoration of that space while in office and presiding in the same
> courtroom.  As such, we reject Judge DeWeese's contention that
> the display constitutes private religious expression protected by the
> Free Speech Clause, falling beyond the bounds of Establishment
> Clause scrutiny.  Indeed, they constitute government speech
> subject to the strictures of the Establishment Clause.

*Id.*  In addition to the reasons stated above, the fact that defendant refers to "[t]he cases passing

through this courtroom" to illustrate the need to adhere to moral absolutism, and signs the poster

as a judge further illustrates that this is not private speech.  (Ex. A-3 at Comment 4.)  Thus,

defendant is speaking as a judge who has had the opportunity to observe many court cases, not as

a private citizen.  Accordingly, the Court finds that the Free Speech Clause does not protect the

display of defendant's poster.

### **CONCLUSION**

For the foregoing reasons, plaintiff's Motion for Summary Judgment is GRANTED as to

all counts in the complaint.  Defendant is enjoined from displaying the poster.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/6/09

23